1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GERALD SPENCE,

11            Petitioner,              No. CIV S-03-0376 GEB KJM P

12        vs.

13   D.L. RUNNELS, et al.,             ORDER AND

14            Respondents.             FINDINGS AND RECOMMENDATIONS

15   _____/

16            Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus under 28 U.S.C. § 2254.  Petitioner raises fifteen claims of error: (1) the record lacks

18   substantial evidence that an empty gin bottle is a deadly weapon; (2) the record lacks substantial

19   evidence that great bodily injury was inflicted; (3) the record lacks substantial evidence that the

20   victim was actually hit with the bottle; (4) the prosecutor committed Brady[1] error in refusing to

21   disclose the identity of possible witnesses; (5) petitioner's waiver of counsel was neither

22   knowing, intelligent nor voluntary; (6) petitioner's waiver of jury trial on priors was neither

23   knowing, intelligent nor voluntary; (7) the trial court's decision to grant petitioner's Faretta[2]

24   _____

25        [1]  Brady v. Maryland, 373 U.S. 83 (1963).

26        [2]  Faretta v. California, 422 U.S. 806 (1975).

1

1  motion deprived petitioner of due process; (8) petitioner's three strikes sentence is cruel and

2  unusual punishment and was imposed in excess of the trial court's jurisdiction; (9) the trial court

3  considered improper factors in deciding post-trial motions to reduce the offense, strike a strike

4  and for a new trial; (10) appellate counsel was ineffective in failing to present issues clearly in

5  the record on direct appeal; (11) the trial court committed error and denied the petitioner a

6  complete record on appeal when it did not disclose the instructions it used during the bench trial;

7  (12) petitioner's sentence enhancement for out-of-state priors violates due process;

8  (13) petitioner's great bodily injury enhancement is unreasonable, violating due process, double

9  jeopardy and the Eighth Amendment; (14) the trial court failed to instruct itself on law and

10  evidence; and (15) the trial court fell asleep during trial and should have been disqualified from

11  hearing the motion for new trial made in part on those grounds.  Respondent has filed an answer,

12  and petitioner has filed a traverse.

13  I.  Factual And Procedural Background

14         After reviewing the record, the court finds the state Court of Appeal's recitation of

15  the facts of the offense to be accurate:

16         Just before 5:00 a.m. on April 18, 2000, Cedric Greaves was
       walking near Capitol Avenue to catch a bus to connect to Amtrak
17      and thence to his state job in Berkeley.  Defendant, who by his own
       testimony admitted he was "very drunk," having finished a fifth of
18      gin (contained in a 15-inch-tall bottle), hollered at Greaves and
       asked if he had seen a red car.  Greaves kept walking, but this
19      enraged defendant, who trailed Greaves, called him "nigger" and
       "faggot" and asked why a Black man would do that to another
20      Black man.  Defendant then threw the empty gin bottle at
       Greaves's face; however, Greaves turned in time to receive the
21      blow on the back of the head.  The bottle shattered.  The bottle was
       thrown about seven feet.  Greaves drew his knife to fend defendant
22      off, but testified he had done nothing threatening before being
       struck in the head with the bottle.  After speaking with the police at
23      his residence later that morning, Greaves took an ambulance to the
       hospital, where he received three staples to close a one-inch
24      laceration; he had headaches for two weeks and missed some work
       during that time.

25
26         Defendant testified that he had been looking for a girl who had
       entered into a red car.  When Greaves ignored his inquiries, he got

2

1

> angry and swore, whereupon Greaves pulled a knife.  In self-
> defense, defendant reached for the gin bottle he had recently
> emptied and threw it at Greaves.  He could not run away from
> Greaves because he was too drunk, therefore his only alternative
> was to throw the bottle.  On cross-examination, defendant admitted
> he had four felony convictions.

2

3

4

5   Answer, Ex. B at 2-3.

6          In a bench trial, petitioner was convicted of assault with a deadly weapon and

7   enhancements for infliction of great bodily injury and personal use of a deadly weapon.  RT 154-

8   155.[3]  Petitioner waived his right to a court trial on his prior convictions and admitted that he had

9   four prior felony convictions.  RT 155-157.  Petitioner was sentenced to forty-years-to-life on the

10  finding that he had suffered two prior strikes and had two prior serious felony convictions.

11  RT 218-220.

12         Petitioner's direct appeal was denied by the California Court of Appeal and the

13  California Supreme Court.  Answer, Ex. B (Court of Appeal opinion) & Ex. D (Supreme Court

14  opinion).

15         In 2002, petitioner filed for a writ of habeas corpus, which was denied by the

16  Sacramento County Superior Court with a citation to In re Dixon, 41 Cal. 2d 756 (1953).  Id.,

17  Ex. F (Sacramento County Superior Court opinion).  The denial was affirmed by the California

18  Court of Appeal and the California Supreme Court.  Id., Ex. H (Court of Appeal opinion) &

19  Ex. J (Supreme Court opinion).  Petitioner filed for federal habeas relief in this court on February

20  27, 2003.  First Petition at 1.  On October 7, 2003, petitioner filed a second petition for federal

21  habeas relief.  Second Petition at 1.  On March 8, 2004, the two petitions were consolidated.

22  /////

23

24         [3] RT refers to the Reporter's Transcript on Appeal, lodged with this court, while ART
    refers to the Augmented Reporter's Transcript, containing the hearings of May 1 and June 23,
    2000.  CT refers to the Clerk's Transcript on Appeal, lodged with this court.  ACT refers to the

25  Clerk's Augmented Transcript on Appeal, also lodged with this court.  Finally, SRT refers to the
    Supplemental Reporter's Transcript, containing the hearing of June 22, 2000, lodged in response

26  to this court's order of June 30, 2005.

1  Order of March 8, 2004 at 3.  Petitioner filed his amended consolidated petition for federal

2  habeas relief on March 31, 2004.  Am. Consolidated Petition (Pet.) at 1.

3  II.  AEDPA Standards

4           An application for a writ of habeas corpus by a person in custody under a

5  judgment of a state court can be granted only for violations of the Constitution or laws of the

6  United States.  28 U.S.C. § 2254(a).  Federal habeas corpus relief also is not available for any

7  claim decided on the merits in state court proceedings unless the state court's adjudication of the

8  claim:

9            (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established federal law, as
10           determined by the Supreme Court of the United States; or

11           (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
12           State court proceeding.

13   28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA").  See Ramirez v. Castro,

14  365 F.3d 755, 773-75 (9th Cir. 2004) (Ninth Circuit affirmed lower court's grant of habeas relief

15  under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth

16  Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v. Andrade, 538

17  U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did

18  not address the merits of petitioner's Eighth Amendment claim).[4]  Courts are not required to

19  address the merits of a particular claim, but may simply deny a habeas application on the ground

20  that relief is precluded by 28 U.S.C. § 2254(d).  Lockyer, 538 U.S. at 71 (overruling Van Tran v.

21  Lindsey, 212 F.3d 1143, 1154-55 (9th Cir. 2000) in which the Ninth Circuit required district

22

23           [4]  In Bell v. Jarvis, 236 F.3d 149, 162 (4th Cir. 2000), the Fourth Circuit Court of Appeals
     held in a § 2254 action that "any independent opinions we offer on the merits of constitutional
     claims will have no determinative effect in the case before us . . .  At best, it is constitutional
24   dicta."  However, to the extent Bell stands for the proposition that a § 2254 petitioner may obtain
     relief simply by showing that § 2254(d) does not preclude his claim, this court disagrees.  Title
25   28 U.S.C. § 2254(a) still requires that a habeas petitioner show that he is in custody in violation
     of the Constitution before he or she may obtain habeas relief.  See Lockyer, 538 U.S. at 70-71;
26   Ramirez, 365 F.3d at 773-75.

1   courts to review state court decisions for error before determining whether relief is precluded by

2   § 2254(d).  It is the habeas petitioner's burden to show he is not precluded from obtaining relief

3   by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

4          The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are

5   different.  As the Supreme Court has explained:

6          A federal habeas court may issue the writ under the "contrary to"
            clause if the state court applies a rule different from the governing

7          law set forth in our cases, or if it decides a case differently than we
            have done on a set of materially indistinguishable facts.  The court

8          may grant relief under the "unreasonable application" clause if the
            state court correctly identifies the governing legal principle from

9          our decisions but unreasonably applies it to the facts of the
            particular case.  The focus of the latter inquiry is on whether the

10         state court's application of clearly established federal law is
            objectively unreasonable, and we stressed in Williams [v. Taylor,

11         529 U.S. 362 (2000)] that an unreasonable application is different
            from an incorrect one.

12

13  Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the

14  law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply

15  fails to cite or fails to indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8

16  (2002).

17         The court will look to the last reasoned state court decision in determining

18  whether the law applied to a particular claim by the state courts was contrary to the law set forth

19  in the cases of the United States Supreme Court or whether an unreasonable application of such

20  law has occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court fails

21  to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional

22  or federal law, the Ninth Circuit has held that this court must perform an independent review of

23  the record to ascertain whether the state court decision was objectively unreasonable.  Himes v.

24  Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  In other words, the court assumes the state court

25  applied the correct law, and analyzes whether the decision of the state court was based on an

26  objectively unreasonable application of that law.

1    It is appropriate to look to lower federal court decisions to determine what law has

2  been "clearly established" by the Supreme Court and the reasonableness of a particular

3  application of that law.  See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999).

4  III.  Sufficiency of the Evidence (Claims A, B & C)

5    In his first claim, petitioner argues that the record lacks substantial evidence that

6  an empty gin bottle is a deadly weapon.  Pet. at 5 (Claim A).  In his second claim, petitioner

7  argues that the record lacks substantial evidence that great bodily injury was inflicted.  Id. (Claim

8  B).  In his third claim, petitioner argues that the record lacks substantial evidence that the gin

9  bottle actually hit the victim's head.  Id. at 6 (Claim C).[5]  All three claims are challenges to the

10  sufficiency of the evidence underlying petitioner's conviction for assault with a deadly weapon

11  with enhancements for personal use of a deadly weapon and great bodily injury.  See RT 154-

12  155.

13    The California Court of Appeal rejected the first two claims.  Answer, Ex. B at 3-

14  7.  In dealing with the first claim, the Court of Appeal held that "[w]hether used as a bludgeon or,

15  as here, like a missile, a liquor bottle is readily 'capable' of being used in a deadly manner."  Id.,

16  Ex. B at 6.  In dealing with the second and third claims, the Court of Appeal held that the trier of

17  fact could rationally conclude that the injury was substantial where "the victim received three

18  staples to close his wound and had headaches for two weeks."  Id., Ex. B at 7.  The California

19  Supreme Court denied the third claim without comment.  Id., Ex. J (Supreme Court Order).

20

21    [5]  When petitioner raised Claims C, D, F, I, J, K, L, M, N, and O on state habeas review, the Sacramento County Superior Court held that they were barred by In re Harris, 5 Cal. 4th 813, 829 (1993), In re Waltreus, 62 Cal.2d 218, 225 (1965) and In re Dixon, 41 Cal. 2d 756 (1953). Answer, Ex. F (Superior Court opinion) at 1. The Superior Court's resolution of these claims was not disturbed by the California Court of Appeal and California Supreme Court.  Answer, Ex. H (Court of Appeal opinion) & Ex. J (Supreme Court opinion). Petitioner raised these claims in the pending petition for a writ of habeas corpus and the state Attorney General responded with an argument based on the merits of the claims, not based on petitioner's state procedural default. Pet. at 5, 6, 6a-6b, 6c-6h; Answer at 13, 14, 18, 21-27. In Francis v. Rison, 894 F.2d 353, 355 (9th Cir. 1990), the Ninth Circuit held that a state waives procedural default by failing to raise it in federal court. Because the state failed to raise procedural default as to these claims in its answer, the court reaches the merits of these claims.

In <u>Jackson v. Virginia</u>, the Supreme Court examined the role of a habeas court in considering a challenge to the sufficiency of the evidence:

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

443 U.S. 307, 319 (1979) (emphasis in original).

The court continued:

> [A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.

<u>Id</u>. at 326.  Constitutionally sufficient evidence need not rule out every hypothesis except that of guilt.  <u>Id</u>.  This court must apply the <u>Jackson</u> standard with "explicit reference to the substantive elements of the criminal offense as defined by state law."  <u>Id</u>. at 324 & n.16.

California Penal Code section 245(a)(1) provides in relevant part:

> Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished by imprisonment...

One California court has described the elements of the offense as:

> All that is required to sustain a conviction of assault with a deadly weapon is proof that there was an assault, that it was with a deadly weapon, and that the defendant intended to commit a violent injury on another.

<u>People v. Corson</u>, 221 Cal. App. 2d 579, 582 (1963).

A.  <u>Empty Gin Bottle As A Deadly Weapon (Claim A)</u>

Petitioner claims that there is not substantial evidence proving that an empty gin bottle is a deadly weapon.  Pet. at 5 (Claim A).  In <u>People v. Parks</u>, 4 Cal. 3d 955, 959 n.1 (1971), the California Supreme Court recognized that "any object, instrument or weapon, when used in a

7

1   manner capable of producing and likely to produce death or great bodily injury, is then a deadly

2   weapon." Indeed, one Court of Appeal has recognized that "a beer bottle, which used as a club

3   or missile, constitutes a deadly weapon." People v. Cordero, 92 Cal. App. 2d 196, 199 (1949).

4           Petitioner lifted the bottle over his head and threw the bottle at the victim standing

5   five to seven feet away from him. RT 35-36. The victim testified that if he had not turned to

6   check for traffic, the bottle would have hit him in the face, rather than in the back of the head.

7   RT 35. The bottle's strike caused the victim to be dazed, caused a cut that needed three staples

8   to close and caused head and back pain. RT 46-49.

9           A rational trier of fact could conclude that the way the bottle was used–throwing it

10  at the victim's head–showed that the petitioner intended to use the bottle as a weapon. The

11  resulting injuries from the bottle's strike could be used to conclude that the blow was severe.

12  The fact that the bottle hit the victim on the back of the victim's head only because the victim

13  turned his head could be used to conclude that petitioner was trying to cause more serious

14  injuries than were actually inflicted. A rational trier of fact could conclude that petitioner

15  intended to use the empty gin bottle as a deadly or dangerous weapon to cause the victim serious

16  injury.

17          B. Great Bodily Injury Evidence (Claim B)

18          Petitioner claims that the record lacks substantial evidence that great bodily injury

19  was inflicted. Pet. at 5 (Claim B). In People v. Escobar, 3 Cal. 4th 740, 746 (1992), the

20  California Supreme Court held, with reliance on statutory language, that a "significant or

21  substantial physical injury" constitutes great bodily injury, without a requirement of permanent

22  impairment. In People v. Wallace, 14 Cal. App. 4th 651, 665, 666 (1993),  a case that addresses

23  an instance of lingering, impermanent injury, the Court of Appeal found the evidence sufficient

24  to support a great bodily injury enhancement when the defendant sprayed insecticide-like

25  substance into one victim's eyes, vagina, and anus, and used fingers to apply substance to inside

26  of vagina, causing severe burning for twenty-four hours.

8

1    In this case, as noted, the victim suffered a laceration on the back of his head that

2  required three staples in order to close the wound.  RT 47.  The victim also suffered headaches,

3  backaches and loss of sleep for two weeks and missed seven days of work.  RT 48.  A rational

4  trier of fact could conclude that the victim's injuries were significant or substantial and thus

5  constituted great bodily injury.

6    C.  Evidence That The Empty Bottle Hit Victim (Claim C)

7    Petitioner claims that the record lacks substantial evidence that the empty gin

8  bottle actually impacted the victim's head.  Pet. at 6 (Claim C).

9    The victim testified that the empty bottle hit him on the back of the head, causing his

10  injuries.  RT 35-36.  The existence of the injury implied that something hit the back of the victim's

11  head.  RT 47.  The investigating officer testified that he observed the laceration on the back of the

12  victim's head.  RT 93.  The officer also discovered a broken gin bottle, fragmented with just the neck

13  intact, at the scene of the incident.  RT 94.  Even petitioner admitted that he threw the bottle at the

14  victim, heard the bottle break, even though he did not see it break, and watched the victim stumble

15  and stagger after the bottle broke.  RT 121-122.  A rational trier of fact could conclude that the empty

16  gin bottle that the petitioner threw actually hit the victim.   And the trier of fact's credibility

17  determination in this case is entitled to near total deference under Jackson.  Bruce v. Terhune, 376

18  F.3d 950, 957 (9th Cir. 2004).

19    Even more of a blow to petitioner's argument is this:  an assault is complete even

20  without an injury so long as the requisite force has been used.  See People v. Williams, 26 Cal.

21  4th 779, 789-90 (2001) ("assault only requires an intentional act and actual knowledge of those

22  facts sufficient to establish that the act by its nature will probably and directly result in the

23  application of physical force against another").[6]  Petitioner concedes he threw the bottle at

24  ────────────

25    [6]  Petitioner argues that he meant only to frighten the victim and thus could not be guilty
     of assault.  In People v. Wolcott, 34 Cal.3d 92, 99 (1983), the California Supreme Court held that
     a conviction for assault could not be based on an intent only to frighten.  Although the court has

26  not expressly overruled Wolcott, its continuing viability is questionable in light of the Williams

9

1  Greaves and heard the bottle break, suggesting the force of the throw.  This is sufficient to

2  support a finding of the required force.

3  Petitioner has failed to show that the state court's adjudication of these claims was

4  either contrary to clearly established federal law, involved an unreasonable interpretation of

5  clearly established federal law or involved an unreasonable determination of fact.

6  IV.  Trial Court And Prosecutor Committed Brady Violation (Claim D)

7  Petitioner argues that the trial judge and prosecution committed a Brady violation

8  when they denied petitioner's request for the identity of a percipient witness who verified the

9  victim's lack of injury to the 911 dispatcher, but who, according to the victim, helped the victim

10  discard "blood-soaked" clothing.  Pet. at 6 (Claim D).  The California Supreme Court denied this

11  claim without comment.  Answer, Ex. J (Supreme Court decision).

12  In Brady v. Maryland, 373 U.S. 83, 86 (1963), the Supreme Court recognized a

13  prosecutor's obligation to reveal exculpatory evidence, whether substantive or for impeachment

14  purposes, when such evidence is "material" to the defense.  Evidence is "material" to the defense

15  if "there is a reasonable probability that, had the evidence been disclosed to the defense, the

16  result of the proceeding would have been different."  United States v. Bagley, 473 U.S. 667, 681

17  (1985).

18  Petitioner claims that the identity of the witness was material within the

19  contemplation of Brady.  Pet. at 6.  The information does not meet that standard, however,

20  because there is no reasonable probability that, had the evidence been disclosed, the result of the

21  trial would have been any different.

22

23  court's recognition that "assault does not require a specific intent to injure the victim" and that the defendant "need not be subjectively aware of the risk that a battery might occur."  Williams, 26 Cal. 4th at 788.  Also in Williams, the court pointed out that "a defendant who honestly

24  believes that his act was not likely to result in a battery is still guilty of assault if a reasonable person, viewing the facts known to defendant, would find that the act would directly, naturally

25  and probably result in a battery."  Id. at 788 n.3.  In this case, a reasonable person viewing the facts known to petitioner–that he threw a gin bottle at Greaves–could find that the act would

26  result in a battery, whatever petitioner's intent.

1          Petitioner received a transcription of the 911 tape to use in his defense.  CT 3;

2    ACT 3-7.  The 911 tape was played at trial and the court heard the victim tell the dispatcher he

3    did not need medical attention.  RT 43-44.  Officer Hertzberg, the police officer who interviewed

4    the victim shortly after the assault, testified that he did not see any blood-soaked clothing.  RT

5    101.  The different versions of the extent of the victim's injury and the existence (or not) of any

6    blood-soaked clothing was before the court.  There is no reasonable probability that had the

7    witness testified he would have provided any evidence the court had not heard from different

8    sources.  Petitioner thus cannot show the result of the trial would have been different.  <u>See</u>

9    <u>Spence v. Johnson</u>, 80 F.3d 989, 995 (5th Cir. 1996) ("when the undisclosed evidence is merely

10   cumulative of other evidence, no *Brady* violation occurs").  Accordingly, the state court's

11   adjudication of this claim was neither contrary to nor involved an unreasonable interpretation of

12   clearly established federal law.

13   V.  <u>The Waiver Of Counsel (Claim E)</u>

14          In his next claim, petitioner argues his waiver of counsel was rendered ineffective

15   once new charges were brought against him, and his waiver was not confirmed.  Pet. at 6a (Claim

16   E).  On May 1, 2000, petitioner told the court he wanted to waive his right to counsel and

17   represent himself.  ART 1.  The judge told him he might be facing a term of up to eight years and

18   would be required to serve eighty percent of the sentence and suggested that petitioner's prior

19   conviction was a potential "strike," without explaining the impact of a strike on his potential

20   sentence.  ART 1-2.  After some discussion with the prosecutor of the nature of the charged

21   assault, the court realized the maximum penalty was greater and told petitioner he was facing "up

22   to eleven years in state prison."  ART 2.  Before the end of the hearing, the court had again

23   revised the maximum penalty, telling petitioner "the maximum is sixteen years state prison at 80

24   percent.  If G.B.I. it would be 85 percent."[7]  ART 3.  The printed "Record of Faretta Warnings"

25   _____

26        [7]  "GBI" referred to the enhancement for great bodily injury under Cal. Pen. Code
§ 12022.7.

1  petitioner signed carries a similar prediction: "Penalties for offense if found guilty are possibly

2  16 yrs SP @ 85%."  ACT 1.

3             During the May 1 hearing, before the court issued its final advisement as to

4  penalties, the court and petitioner engaged in the following colloquy:

5            THE COURT: Mr.  Spence, do you understand it's not wise to
            represent yourself in a criminal matter?  Do you understand that?
6
            THE DEFENDANT: Yes, I understand that you said it.
7
            THE COURT: It's not wise to represent yourself in a criminal
8            matter.  You're facing up to eleven years in state prison.  And if
            you go to prison with a strike you would have to serve 80 percent
9            of that term.  Do you understand that?

10           THE DEFENDANT: Yes, ma'am.

11           THE COURT: The court will not help you present your case or
            grant you any special treatment.  You'll be opposed by a trained
12           Prosecutor and you must comply with all the rules of criminal
            procedure and evidence just as an attorney must.  Do you
13           understand that?

14           THE DEFENDANT: Yes, ma'am.

15           THE COURT: If you're convicted you cannot appeal based on the
            claim that you were not competent to represent yourself.  Do you
16           understand that?

17           THE DEFENDANT: Yes, ma'am.

18           THE COURT: All right.  Do you still wish to represent yourself?

19           THE DEFENDANT: Yes, ma'am.

20  ART 2-3.

21            The printed <u>Faretta</u> waiver form also informed petitioner that if he was disruptive,

22  he would be removed from the courtroom.  It included a statement, not borne out by the

23  reporter's transcript, that "The Court made inquiry into defendant's legal background, training

24  and knowledge."  ACT 1.

25  /////

26  /////

1    Before petitioner's preliminary hearing, the court briefly revisited the <u>Faretta</u>

2   waiver and again admonished petitioner that he would be "held to the very same standards that

3   you would be held to if you were an attorney . . ."  CT 18; <u>see also</u> CT 24.

4    On June 15, 2000, the district attorney filed a motion to amend the information,

5   declaring:

6    I recently discovered that the defendant has three felony
     convictions in Arizona.  The information needs to be amended to
7    add an additional strike and section 667(a) five-year prior, as well
     as two section 667.5(b) one year priors.

8

9   CT 137.  The proposed amended information bore the notation "3 Strikes."  CT 138.  The

10  charging language informed petitioner "It is further alleged that because the defendant, GERALD

11  SPENCE, has suffered the above listed conviction, he/she comes within the provisions of Section

12  667(b)-(i) and Section 1170.12 of the Penal Code" and also lists two "serious felony" priors as

13  well as two "prison priors."  CT 138-141.

14    On June 22, 2000, the court heard the motion to amend the petition.  Petitioner

15  objected to the proposed amendment, but the court overruled the objection.  SRT 1-2.  The court

16  then advised petitioner of the nature of the charges and listed the prior convictions alleged in the

17  amended information:   a 1983 attempted robbery in Sacramento County, a 1992 attempted

18  robbery in Arizona, a 1993 prior prison term for a narcotics offense in Arizona, and a 1987

19  prison term for a burglary in Arizona.  SRT 2.  The court entered petitioner's not guilty plea and

20  denial of the enhancements, but did not advise him of the revised maximum sentence he faced.

21  SRT 2-3.  The amendments, however, changed the maximum sentence petitioner faced to a total

22  term of forty-years-to-life.

23    The court then turned to petitioner's motion for various transcripts, including the

24  transcript of his <u>Faretta</u> hearing.  SRT 4.  When the court asked if petitioner was withdrawing his

25  waiver of counsel, petitioner replied, "I'm not withdrawing anything."  SRT 4.  There was no

26  /////

13

other discussion of the impact of the amended information on petitioner's waiver of his right to counsel.  SRT 4-6.

On appeal, petitioner argued that his <u>Faretta</u> waiver was not "knowing" because he was unaware of the maximum penalties attached to the amended information and because he was not made aware of the dangers of self-representation in the face of these penalties.  Answer, Ex. A at 21-32.  The Court of Appeal rejected the claim:

> At the initial waiver, the trial court told defendant his maximum sentence exposure was 16 years.  Later, after the preliminary hearing, the People discovered defendant's foreign convictions and amended the information: This increased defendant's prison exposure.  At no time did defendant express a desire for a lawyer.
>
> Defendant first argues that the increased sentence possible after the information was amended vitiates his prior waiver of the right to counsel.  He cites no authority requiring a court to re-advise a pro per defendant when the People amend the information, nor any authority forbidding the People from amending an information absent a pro per defendant's knowing consent.  The only case he cites infers [sic] that a court must "inquire whether appellant understood the charges against him and the potential penal consequences if he lost at trial."  That does not mean the pleadings must be frozen as of the date of the *Faretta* hearing.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> The mental capacity to waive counsel with an understanding of all the probable risks is amply reflected by the present record.
>
> First, on May 1, 2000, defendant signed a waiver form. . . .
>
> Second, at the *Faretta* hearing that day, the court explained the People might allege a strike.  At that time the People apparently knew about a prior Sacramento County strike; only defendant knew about his Arizona convictions and prison terms and he did not volunteer that information to the prosecutor.  The court told defendant it was not wise to represent himself, he would not get special treatment, and he would have to follow legal rules.  Defendant said he understood and had read the written form he had signed.
>
> Third, on May 12, 2000, before the preliminary hearing began, the court verified defendant had properly waived counsel.  The court reiterated that defendant had been advised of the hazards of self-representation, and knew

14

1    he would be held to the standards of an attorney.  Defendant's only
     "hesitation" pertained to a discovery request he had filed . . . . After that
2    matter was addressed defendant reiterated that he did not want an attorney.
     At the end of the preliminary hearing, after defendant was held to answer,
3    the court again asked him if he wanted an attorney and he did not.

4    Fourth, throughout the case defendant made numerous written and
     oral motions and at trial he lodged a number of successful
5    objections.  This shows he was fully engaged in the task at hand,
     although in the end he lost.  From beginning to end he wanted no
6    assistance.  This was his choice to make.

7    Answer, Ex. B at 7-10 (internal case citation omitted).

8            In <u>Johnson v. Zerbst</u>, the United States Supreme Court considered the requisites

9    for a valid waiver of counsel and concluded:

10           The determination of whether there has been an intelligent waiver
             of right to counsel must depend, in each case, upon the particular
11           facts and circumstances surrounding that case, including the
             background, experience, and conduct of the accused.
12

13   304 U.S. 458, 464 (1938), <u>overruled in part on other grounds</u>, <u>Edwards v. Arizona</u>, 451 U.S. 477

14   (1981).

15           The Court returned to the question in <u>Von Moltke v. Gillies</u>, and found that a trial

16   judge bears the "serious and weighty responsibility" of determining

17           whether there is an intelligent and competent waiver by the
             accused.  To discharge this duty properly in light of the strong
18           presumption against waiver of the constitutional right to counsel, a
             judge must investigate as long and as thoroughly as the
19           circumstances of the case before him demand.   . . . .To be valid
             such waiver must be made with an apprehension of the nature of
20           the charges, the statutory offenses included within them, the range
             of allowable punishments thereunder, possible defenses to the
21           charges and circumstances in mitigation thereof, and all other facts
             essential to a broad understanding of the whole matter.
22

23   332 U.S. 708, 723-24 (1948) (plurality op.) (footnotes, internal quotations omitted).

24   /////

25   /////

26   /////

                                        15

1    In <u>Faretta v. California</u>, the Court held that a criminal defendant has a Sixth

2    Amendment right to represent himself at trial and noted that before a trial court grants a motion,

3    the defendant

4         should be made aware of the dangers and disadvantages of self-
          representation, so that the record will establish that he knows what
5         he is doing and his choice is made with eyes open.

6    422 U.S. 806, 835 (1975) (internal citations, quotation omitted).

7    Finally, in <u>Patterson v. Illinois</u>, the Court noted:

8         we have imposed the most rigorous restrictions on the information
          that must be conveyed to a defendant, and the procedures that must
9         be observed, before permitting him to waive his right to counsel at
          trial.

10

11   487 U.S. 285, 298 (1988); <u>see generally</u> <u>United States v. Robinson</u>, 913 F.2d 712, 714-15 (9th

12   Cir. 1990) (defendant wishing to waive right to counsel must be made aware of the nature of

13   charges against him, the possible penalties, and the dangers and disadvantages of representation);

14   <u>Harding v. Lewis</u>, 834 F.2d 853, 857 (9th Cir. 1987) (same); <u>United States v. Aponte</u>, 591 F.2d

15   1247, 1249-50 (9th Cir. 1978) (same);

16   A court's failure to secure a valid <u>Faretta</u> waiver, which includes an accurate

17   advisement as to maximum penalties,  constitutes per se prejudicial error, and the harmless error

18   standard is inapplicable.  <u>United States v. Erskine</u>, 355 F.3d 1161, 1167, 1170 n.12 (9th Cir.

19   2004).

20   A. <u>Advisement On The Dangers Of Self-Representation</u>

21   Petitioner argues he was not "adequately warned of risks and dangers of

22   representing himself at trial," Pet. at 6a, and when the court approved his request to proceed

23   without counsel, it "didn't even know Petitioner's educational level nor mental state."  Traverse

24   at 19.

25   /////

26   /////

16

1        Although the Supreme Court has alluded to the advisements that should precede a

2    court's granting a <u>Faretta</u> motion, it has not prescribed a formula to be followed.  Indeed, in a

3    dissent from a denial of certiorari, Justice White observed:

4            Two other Courts of Appeals have . . . read our decision in *Faretta*
             as requiring that a trial judge conduct a special hearing to ensure
5            that the accused understands the dangers and disadvantages of
             proceeding *pro se.*
6
             By contrast, four Courts of Appeals have taken the position that no
7            specific inquiries or special hearings must be considered before an
             accused's exercise of his *Faretta* rights will be considered knowing
8            and intelligent.  This conflict among the Courts of Appeals has
             now gained the attention of, and been a source of confusion to, the
9            state courts as well.

10           Because a conflict among the lower courts has emerged concerning
             the proper application and interpretation of our decision in *Faretta*,
11           I would grant certiorari. . . .

12   <u>McDowell v. United States</u>, 484 U.S. 980 (1987) (White, J., dissenting) (internal citations,

13   quotations omitted).

14        In <u>McDowell</u>, although the Sixth Circuit found the defendant had knowingly

15   waived his right to counsel, it adopted the approach of the District of Columbia Circuit and used

16   its supervisory powers to impose strict requirements for <u>Faretta</u> advisements in future cases.

17   <u>United States v. McDowell</u>, 814 F.2d 245, 249-50 (6th Cir. 1987); <u>see</u> <u>United States v. Bailey</u>,

18   675 F.2d 1292, 1297 (D.C. Cir. 1982).  In contrast, the Ninth Circuit is among those courts that

19   do not require the use of a particular script when undertaking a <u>Faretta</u> inquiry, but instead

20   examine the totality of the circumstances in evaluating the validity of a waiver:

21           Neither the Constitution nor *Faretta* compels the district court to
             engage in a specific colloquy with the defendant.  Because we
22           cannot impose a procedural framework on state courts unless
             compelled by the Constitution, we need not address whether the
23           suggested colloquy was followed here.

24   <u>Lopez v. Thompson</u>, 202 F.3d 1110, 1117 (9th Cir. 2000) (en banc); <u>see also</u> <u>Ferguson v. Bruton</u>,

25   217 F.3d 983 (8th Cir. 2000) (no specific warning on dangers of self-representation needed;

26   entire record is reviewed).

In <u>Dallio v. Spitzer</u>, the Second Circuit held:

> Because neither *Faretta's* holding nor its *dictum* clearly establishes that explicit warnings about the dangers and disadvantages of self-representation are a minimum constitutional prerequisite to every valid waiver of the right to counsel, and because there is no other challenge raised to Dallio's knowing and intelligent waiver of this right, we conclude that the state court's rejection of Dallio's waiver claim was neither contrary to nor an unreasonable application of clearly established federal law. . . .

343 F.3d 553, 564-65 (2d Cir. 2003), <u>cert. denied</u>, 541 U.S. 961 (2004). This holding is supported by the split among the circuits over the appropriate standards for advisement and waiver and by the differences in the Supreme Court's own authority about the level of formality required for a valid waiver.

In light of the above, to the extent that petitioner is challenging the state court's failure to inquire into his educational level and advise him of the risks and disadvantages of self-representation, the Court of Appeal's decision was not contrary to or an unreasonable application of clearly established federal law.

B. <u>The Knowing And Intelligent Nature Of The Waiver</u>

Petitioner also challenges the knowing and intelligent nature of his waiver, arguing that the radically increased penalties attached to the amended information vitiated his earlier waiver of counsel.

In <u>Evans v. Raines</u>, 705 F.2d 1479, 1480 (9th Cir. 1983), the Ninth Circuit held that a waiver of counsel is not valid "in the absence of some knowledge of [defendant's] understanding of the seriousness of the charges. . . ." <u>See also</u> <u>United States v. Moskovits</u>, 86 F.3d 1303, 1309 (3d Cir. 1996) (waiver of counsel invalid when defendant unaware court could impose sentence longer than 15 year term imposed earlier; 20 year sentence vacated and case remanded for resentencing); <u>United States v. Silkwood</u>, 893 F.2d 245, 249 (10th Cir. 1989) (waiver of counsel not valid when trial court's advice that sentence "could be enhanced up to fifteen years" was incorrect; defendant sentenced to term of twenty-five-years-to-life). The

18

Eighth Circuit has held that clearly established federal law requires a trial court to inform a defendant of the "range of allowable punishments" before accepting a waiver of counsel.  Shafer v. Bowersox, 329 F.3d 637, 649 (8th Cir. 2003).

In United States v. Erskine, cited above, when defendant sought to waive his right to the assistance of counsel, the court asked him whether he understood the maximum penalty he was facing; when defendant told the court the maximum sentence was one year, the court agreed. This was incorrect:  the maximum penalty was five years.  Not until the second day of trial did the government point out the correct maximum penalty.  355 F.3d at 1164-65 & n.4. The Ninth Circuit noted:

> Despite a revelation that quintupled the stakes of self-representation for Erskine, the court did not acknowledge its prior mistake, address Erskine to ascertain whether he had understood the government's representation, advise him of the correct maximum penalty, or ask him whether in light of the new and different information as to the penalty he faced, he desired to withdraw his *Faretta* waiver.

Id. at 1165.  The court found Erskine's waiver of counsel was not knowing or intelligent because he had not understood the maximum penalty at the time he waived counsel.  Id. at 1171.

In this case, when petitioner first asserted his right to represent himself, the court ultimately correctly informed him he was facing a maximum penalty of sixteen years in prison. When the prosecutor's motion to amend the information was granted, the maximum penalty increased to forty-years-to-life, yet the court did not advise petitioner of the change or discuss whether it affected petitioner's decision to represent himself.  Generally, a Faretta waiver remains in effect throughout the criminal proceedings, unless the circumstances suggest the waiver was limited.  Arnold v. United States, 414 F.2d 1056, 1059 (9th Cir. 1969); White v. United States, 354 F.2d 22, 23 (9th Cir. 1965).  However, a "substantial change in circumstances will require the district court to inquire whether the defendant wishes to revoke his earlier waiver."  United States v.  Fazzini, 871 F.2d 635, 643 (7th Cir. 1989); Schell v. United States, 423 F.2d 101, 102-03 (7th Cir. 1970) (waiver of counsel invalidated by increased maximum sentence, among

other things); <u>compare</u> <u>Torres v. United States</u>, 140 F.3d 392, 404 (2d Cir. 1998) (fact that judge decided to submit sentencing to jury after <u>Faretta</u> waiver did not vitiate waiver because it did not increase the penalty defendant faced).  A requirement of readvisement under changed circumstances is consonant with the Supreme Court's repeated holding that a waiver of counsel is valid only if made with an awareness of the possible penalties and with eyes open.  <u>Von Moltke</u>, 332 U.S. at 723; <u>Faretta</u>, 422 U.S. at 835.

With regard to this claim, then, the undersigned must conclude that the state Court of Appeal did not apply the clearly established law reviewed above as required to survive petitioner's challenge before this court.  The appellate court's assertion that a <u>Faretta</u> waiver does not prevent the prosecutor from amending the charging documents and thereby increasing a defendant's maximum exposure, Answer, Ex. B at 8, avoids the ultimate question whether petitioner's waiver of counsel remained valid in light of the increased penalties.  Further, the intimation that, because the court initially informed petitioner that one strike had been alleged and petitioner himself knew of his other prior convictions, petitioner was somehow aware he ultimately would face a term of forty-years-to-life, Answer, Ex. B at 9-10, is unsupported; nowhere in the record is there a suggestion that petitioner was aware of the impact of one or more strikes on his total exposure.  That he later brought motions to strike his prior convictions and to reduce his sentence says little about his understanding at the time the amended information was filed as to whether the increased penalties would have impacted his waiver of counsel.  <u>Erskine</u>, 355 F.3d at 1170-71.

Accordingly, given the clearly established federal law on the requisites for a valid <u>Faretta</u> waiver, the writ should be granted on this ground.

VI. <u>Petitioner's Waiver Of Jury Trial On Priors Was Not Knowing, Intelligent Or Voluntary (Claim F)</u>.

Petitioner also claims that his waiver of a jury trial to determine the existence of his prior convictions was not knowing or voluntary because he was not told of the penal

1 | consequences of his admissions.  Pet. at 6a (Claim F); Traverse at 19-22.  The California

2 | Supreme Court denied this claim without comment.  Answer, Ex. J (Supreme Court opinion).

3 |    In Wright v. Craven, 461 F.2d 1109 (9th Cir. 1972) (per curiam), the Ninth

4 | Circuit held that an admission of a prior felony conviction was the functional equivalent of a

5 | guilty plea to a separate charge, so an admission is not valid unless the defendant understands the

6 | penalties flowing from the admission.  In Lowell v. Prunty, 91 F.3d 1358, 1359 (9th Cir. 1996)

7 | (per curiam), the Ninth Circuit held that unless the defendant was challenging the validity of the

8 | prior convictions that he had admitted, admitting to the convictions without knowing of the

9 | penalties of the admission was, at most, harmless error.

10 |    Here, petitioner claims that his rights were violated when he admitted his prior

11 | convictions without knowing the penalties attached to the admission.  Pet. at 6a.  However,

12 | petitioner does not challenge the validity of his prior convictions.  Even if petitioner admitted his

13 | prior convictions without knowing the penalties he faced by the admissions, the error, at most, is

14 | harmless.  Petitioner has failed to show that the state court's adjudication of this claim was either

15 | contrary to or involved an unreasonable interpretation of clearly established federal law.

16 | VII.  Petitioner Was Deprived Of Due Process When Trial Court Granted Petitioner's Faretta
   Motion (Claim G)

17 |

18 |    Petitioner argues he had "no idea what he was doing and had no knowledge of

19 | three strikes or one strike.  The only help [he] had was a court-appointed investigator. . . ."  Pet.

20 | at 6b (Claim G).  As the Court of Appeals for the Seventh Circuit has explained, however:

21 |    Knowing that the Supreme Court has already foreclosed a
   defendant who elects to represent himself from pursuing an

22 |    ineffective-assistance claim on appeal . . . [petitioner] recasts what
   is essentially the same argument in the mold of a denial of his due

23 |    process right to a fair trial, arguing that a readily apparent
   deficiency in performance at trial offends not only the defendant's

24 |    rights but also undermines public confidence in the integrity of
   judicial proceedings.

25 |

26 | /////

1             Unfortunately for [petitioner], we've already considered – and
           rejected–his argument.

2

3  United States v. Egwaoje, 335 F.3d 579, 587 (7th Cir. 2003).  Petitioner's similar attempt to

4  recast an ineffective-assistance-of-self argument as a due process claim fails.

5  VIII.  Three Strikes Sentence In Excess Of Jurisdiction And Cruel And Unusual Punishment
       (Claim H)

6

7             In this claim, petitioner first claims that the trial judge exceeded his jurisdiction

8  when he sentenced petitioner to a three strikes sentence of forty-years-to-life without specifically

9  stating that petitioner was being sentenced under California Penal Code § 1192.7, which allows

10  out-of-state priors to count as strikes in California.  Pet. at 6b-6c (Claim H).  This conclusory

11  statement does not appear to allege a violation of the federal Constitution.  To the extent that this

12  claim is based on state law errors, federal habeas relief does not lie.  Estelle v. McGuire, 502

13  U.S. 62, 67 (1991).

14             Second, petitioner claims that his sentence of forty-years-to-life under California's

15  Three Strikes Law constitutes cruel and unusual punishment and, as factoring in priors, violates

16  double jeopardy.  Pet. at 6c (Claim H).[8]

17             In Lockyer v. Andrade, 538 U.S. 63 (2003) and Ewing v. California, 538 U.S. 11

18  (2003), the Supreme Court considered California's Three Strikes law.  In Ewing, a direct appeal

19  from a judgment of conviction, the Supreme Court recognized the longstanding "tradition of

20  deferring to state legislatures in making and implementing" policy decisions about sentencing

21  laws.  538 U.S. at 24.  And while the Court also recognized a "narrow proportionality principle,"

22

23       [8] Respondents argue that petitioner "procedurally defaulted" this claim by not raising it at
trial.  Answer at 7.  The California Court of Appeal held that petitioner had waived this claim
when he failed to raise a cruel punishment objection during sentencing, citing People v. Kelley,

24  52 Cal. App. 4th 568, 583 (1997).  Answer, Ex. B at 11.  The Supreme Court has found a district
court may reach the merits of a habeas petitioner's claim where, as here, the merits are "easily

25  resolvable against the petitioner whereas the procedural-bar issue involve[s] complicated issues
of state law."  Lambrix v. Singletary, 520 U.S. 518, 525 (1997).  Therefore, this court reaches the

26  merits of this claim.

1    it held the Eighth Amendment "does not require strict proportionality between crime and

2    sentence.  Rather, it forbids only extreme sentences that are grossly disproportionate to the

3    crime."  Id. at 23 (internal quotations omitted).

4            The Court did not find Ewing's sentence of twenty-five-years-to-life to meet the

5    standard of gross disproportionality.  His commitment offense—grand theft—was based on his

6    appropriation of $1,200.00 worth of merchandise from a golf pro shop.  It was committed while

7    he was on parole from a sentence for burglary and robbery.  Id. at 20, 28.  His record included

8    "numerous misdemeanor and felony offenses," most of them committed while on probation or

9    parole, and nine prison terms.  Id. at 30.  The Court concluded: "To be sure, Ewing's sentence is

10   a long one.  But it reflects a rational legislative judgment, entitled to deference, that offenders

11   who have committed serious or violent felonies and who continue to commit felonies must be

12   incapacitated."  Id.

13           Lockyer addressed the interaction of AEDPA and the Court's Eighth Amendment

14   jurisprudence.  As in Ewing, the Court recognized the lack of clarity in its earlier Eighth

15   Amendment cases but described the "governing legal principle" in such cases to be "gross

16   disproportionality."  Lockyer, 538 U.S. at 72.  The Court ultimately found the California Court of

17   Appeal had not applied federal law in an unreasonable fashion or reached a result contrary to

18   federal precedent on indistinguishable facts.  Id. at 74.  As a result, it upheld Andrade's sentence

19   of fifty-years-to-life following his convictions for two counts of grand theft stemming from two

20   incidents of shoplifting and the findings he had suffered three prior convictions for residential

21   burglary.  Id. at 65.  His record also included two federal drug convictions, a federal escape

22   charge, and some misdemeanor thefts.  Id. at 66-67.

23           In light of Lockyer and Ewing, whether the state Court of Appeal's determination

24   was an unreasonable application of clearly established federal law depends on the severity of the

25   offense, the availability of parole and length of sentence, and the impact of recidivism.  Id. at 72.

26   /////

1    Petitioner hit a man in the back of the head with a glass bottle.  RT 35-36, 121-

2   122.  The injury caused by the bottle's impact required three staples to close.  RT 47.  This

3   offense, assault with a deadly weapon with sentence enhancements for great bodily injury and

4   personal use of a deadly weapon, was a serious offense, accomplished with actual violence.

5    As a third striker, petitioner will not earn conduct credit on his sentence and thus

6   will not be eligible for parole until he has served more than twenty-five years.[9]  Contra Rummel

7   v. Estelle, 445 U.S. 263, 280 (1980) (life sentence for small theft ameliorated by Texas policy of

8   liberal grant of good time that might make person eligible for parole in twelve years).

9   Nevertheless, the severity of the sentence alone will not make it grossly disproportionate.

10   Harmelin v. Michigan, 501 U.S. 957 (1991) (sentence of life without the possibility of parole for

11   possession of large amount of drugs did not violate Eighth Amendment).

12    Finally, there is the impact of petitioner's recidivism and the severity of

13   petitioner's prior crimes.  See Ramirez v. Castro, 365 F.3d 755, 769 (9th Cir. 2004).  Petitioner

14   has a serious criminal history.  This criminal history includes: a conviction for attempted robbery

15   in1983; a conviction for burglary in 1987; a conviction for attempted robbery in 1992; and a

16   conviction for selling cocaine in 1993.  CT 247-249.  Prior prison commitments have not had a

17   rehabilitative impact on his behavior.  Less than four months after being discharged from parole,

18   petitioner committed the assault with a deadly weapon that qualified him to be sentenced as a

19   three-strike offender.  CT 243, 249.  As the Supreme Court has observed:

20          One in [defendant's] position has been both graphically informed
          of the consequences of lawlessness and given an opportunity to
21          reform, all to no avail.  Article 63 [the Texas recidivist statute] thus
          is nothing more than a societal decision that when such a person
22          commits yet another felony, he should be subjected to the
          admittedly serious penalty of incarceration for life, subject only to
23          the State's judgment as to whether to grant him parole.

24   Rummel, 445 U.S. at 278.  Petitioner, too, has been "informed of the consequences of

25   _____

26    [9]  A third striker is not permitted to earn custody credits against his minimum sentence.
    In re Cervera, 24 Cal. 4th 1073 (2001).

1  lawlessness," but chose to ignore them.  This case does not raise a presumption of gross

2  disproportionality.  See Rios v. Garcia, 390 F.3d 1082, 1086 (9th Cir. 2004); compare Ramirez,

3  365 F.3d at 768 ("three strikes" sentence grossly disproportionate to the underlying petty theft

4  with a prior theft when priors had been shoplifting incidents in which defendant pushed a

5  security guard and a confederate drove over the foot of a different security guard and defendant

6  had served no time in prison).  Petitioner has failed to show that the state court's adjudication of

7  this claim was either contrary to or involved an unreasonable interpretation of clearly established

8  federal law.

9  IX.  Trial Court Used Erroneous Information In Deciding Petitioner's Post-Trial Motions
        (Claim I)
10

11        Petitioner claims that the trial judge considered improper factors in deciding three

12  post-trial motions, violating his substantive due process rights.  Pet. at 6c-6d (Claim I).  The

13  California Supreme Court denied the claim without comment.  Answer, Ex. J (Supreme Court

14  opinion).

15        The imposition of a sentence violates due process if it rests on information that is

16  "extensively and materially false."  Townsend v. Burke, 334 U.S. 736, 741 (1948); Oxborrow v.

17  Eikenberry, 877 F.2d 1395, 1400 (9th Cir. 1989).  In this case, petitioner claims the court

18  "assum[ed] the bottle impacted with Greave's [sic] head."  Pet. at 6d.  As noted above, however,

19  petitioner's attacks on the sufficiency of the evidence that Greaves suffered great bodily

20  injury and that the bottle actually struck Greaves are unavailing.  See pages 7-9 supra.  His

21  attempt to restate the issue as one of due process in sentencing is similarly unproductive.

22        Moreover, to the extent petitioner is arguing that the judge relied on this

23  information in considering petitioner's Romero[10] motion to strike his prior convictions, the claim

24

25        [10] People v. Superior Court (Romero), 13 Cal. 4th 497 (1996).  Although petitioner in his
    traverse states this claim does not incorporate a challenge to the handling of a Romero motion,
26  his petition appears to incorporate such a claim and thus it is addressed here.

1  does not state a federal question.  Pet. at 6d.  A <u>Romero</u> motion is addressed to the discretion of

2  the state superior court; its denial does not raise a federal issue.

3          Petitioner also claims that the trial judge considered improper factors, such as his

4  criminal history and substance abuse, when considering petitioner's motion to strike a strike.[11]

5  Absent fundamental unfairness, federal habeas relief is not available for a state court's

6  misapplication of its own sentencing laws.  <u>Ely v. Terhune</u>, 125 F. Supp. 2d 403, 411 (C.D. Cal.

7  2000) (holding claim that state court erred by refusing to strike a prior strike conviction did not

8  state a federal question).  Petitioner cannot show that he was denied fundamental fairness during

9  this portion of the sentencing proceedings.  Factors such as substance abuse, criminal history and

10  prospects for the future are proper considerations when a trial court contemplates striking a

11  strike.  <u>People v. Carmony</u>, 33 Cal. 4th 367, 378-79 (2004).

12          Finally, petitioner claims that the trial judge was disqualified from hearing

13  petitioner's motion for a new trial.  This claim makes the same arguments as does petitioner's

14  claim O, which is dealt with below.

15  X.  <u>Ineffective Assistance Of Appellate Counsel (Claim J)</u>

16          Petitioner claims that appellate counsel was ineffective because his counsel failed

17  to present all of petitioner's meritorious claims on direct appeal.  Pet. at 6d-e (Claim J).  The

18  California Supreme Court denied this claim without comment.  Answer, Ex. J (Supreme Court

19  opinion).

20          Petitioner claims that the claims identified in the instant petition as C, D, F, I, K,

21  L, M, N, and O should have been raised on direct appeal and that his attorney did not have a

22  strategic reason for not raising the claims.  Pet. at 6d-6e.  In light of this court's finding that

23  Claims C, D, F, I, K, L, M, N, and O do not provide grounds for federal habeas relief, appellate

24  /////

25

26          [11] A motion to strike a strike is brought under California Penal Code § 1385.

1   counsel violated no duty to petitioner by failing to raise these issues on direct appeal. <u>Jones v.</u>

2   <u>Smith</u>, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000).

3   XI.  <u>Petitioner's Sentence Enhancement For Out-Of-State Priors Violates Due Process (Claim L)</u>

4          Petitioner claims that the two separate five-year sentence enhancements imposed

5   because of his prior convictions in Arizona were unconstitutional because it was never proved

6   that petitioner actually spent more than one year in prison, as required under California law.  Pet.

7   at 6f (Claim L).  The California Supreme Court denied this claim without comment.  Answer,

8   Ex. J (Supreme Court opinion).

9          Under California Penal Code § 667(a), a court can impose five-year enhancements

10  for prior serious felony convictions.  The statute requires only that the prior conviction have been

11  "brought and tried separately."  There is no requirement that in order to impose this

12  enhancement, it must be proven that petitioner spent more than one year in prison.  Petitioner's

13  misreading of state law does not raise a due process claim cognizable in a federal habeas petition.

14  <u>Compare</u>  <u>Hubbart v. Knapp</u>, 379 F.3d 773, 779 (9th Cir. 2004), <u>cert</u>. <u>denied</u>, ___ U.S. ___, 125

15  S. Ct. 913 (2005) (habeas relief generally unavailable for alleged error in the interpretation or

16  application of state law).

17  XII.  <u>Great Bodily Injury Enhancement Is Unreasonable (Claim M)</u>

18         Petitioner claims that the application of the great bodily injury enhancement is

19  arbitrary and capricious and violates substantive due process, equal protection and double

20  jeopardy.  Pet. at 6f-6g (Claim M); Traverse at 28-29.  Petitioner also argues that the state Court

21  of Appeal found specific intent in the great bodily injury enhancement and therefore petitioner's

22  status as an alcoholic became a mitigating factor.  The Court of Appeal held that "[s]ubstantial

23  evidence shows defendant used a deadly weapon" and that the "trier of fact could rationally

24  conclude the injury was 'substantial.'"  Answer, Ex. B at 6-7.

25         First, petitioner argues that application of the great bodily injury enhancement

26  violates the Eighth Amendment, because it caused petitioner's assault conviction to become his

third strike.  Pet. at 6f-6g; Traverse at 28-29.  Petitioner's factual premise is incorrect.  Under

Cal. Pen. Code § 667(c) & (e)(2)(A)(ii), the three strikes sentencing provisions are triggered by

the conviction for any felony whether or not it is violent or serious; five year enhancements,

however, are imposed only if the prior and current offenses are serious felonies.  Cal. Pen. Code

§ 667(a); see People v. Hensen, 57 Cal. App. 4th 1380-88 (1997).

Second, petitioner argues that his sentence based on section 12022.7 violates

California's double jeopardy statute, Penal Code § 654, because he is being punished twice for

the same conduct.  Traverse at 28.  Sections 654 and 12022.7 both are provisions of state law.

As previously noted, federal habeas relief does not lie for errors of state law.  Estelle, 502 U.S. at

67.

Third, petitioner argues that the great bodily injury enhancement violates equal

protection.  Pet. at 6f-6g.  To establish an equal protection violation, petitioner must show the

state has enacted regulations affecting similarly situated groups differently.  City of Cleburne v.

Cleburne Living Center, 473 U.S. 432, 439-41 (1985).  However, petitioner does not present any

arguments showing how his sentence enhancement violates equal protection.  This court is not

required, and hereby declines, to comb the record in order to develop an argument for petitioner.

See Stuard v. Stewart, 401 F.3d 1064, 1066-67 (9th Cir.), cert.  denied sub.  nom Stuard v.

Schriro, __ U.S. __, 125 S.Ct. 234 (2005).   Petitioner's failure to develop his equal protection

argument means it is waived.

Fourth, petitioner argues that because the state Court of Appeal found specific

intent to commit great bodily injury, the court should have considered his alcoholism as a

mitigating factor.  Penal Code § 12022.7(a) requires general intent to inflict great bodily injury.

People v. Carter, 60 Cal. App. 4th 752, 755 (1998).  Therefore, petitioner got the benefit of a

higher standard of intent when the Court of Appeal upheld his conviction.  Hubbart, 379 F.3d at

779.

/////

1    Petitioner has failed to show that the state court's adjudication of this claim was

2   either contrary to or involved an unreasonable interpretation of clearly established federal law or

3   even that there were violations of state law rising to the level of constitutional deprivations.

4   XII.   Trial Court Failed To Instruct Itself On Law And Evidence And Denied Petitioner A
           Complete Record On Appeal (Claims K, N)

5

6    Petitioner claims that the trial court failed to instruct itself on law and evidence

7   and denied petitioner a complete record on appeal when it failed to disclose the instructions of

8   law upon which the court relied.  Pet. at 6e (Claim K) & 6g (Claim N).  The California Supreme

9   Court denied this claim without comment.  Answer, Ex. J (Supreme Court opinion).

10   As a threshold matter, petitioner claims that the trial court failed to instruct itself

11  on law and evidence.  The Supreme Court has held that trial judges are presumed to know the

12  law and to apply it in making their decisions.  Walton v. Arizona, 497 U.S. 639, 653 (1990),

13  overruled on other grounds, Ring v. Arizona, 536 U.S. 584 (2002).  Indeed, in Lambrix v.

14  Singletary, 520 U.S. 518, 532 n.4 (1997), the court rejected the idea that a sentencing judge

15  misapplied the law even though his sentencing instructions to the jury were not proper, relying on

16  the presumption that judges apply the correct law in making their decisions.  Petitioner has not

17  rebutted this well-established presumption.

18   Second, petitioner claims that his rights were violated when the trial court did not

19  place copies of the instructions on the law the court used in petitioner's record on appeal.

20  Because petitioner has not rebutted the presumption that the trial court applied the law correctly,

21  there can be no error from any such omission.

22   Moreover, even if the court were under some obligation to include the law upon

23  which it relied in the transcript, petitioner's claim still fails.  In Mayer v. City of Chicago, 404

24  U.S. 189, 194-95 (1971), the Supreme Court noted that the denial of a complete transcript to an

25  indigent defendant would not violate the Fourteenth Amendment unless defendant shows "a

26  colorable need" for it; the court recognized that a partial transcript would be sufficient when the

1   appellate issues did not extend to the entire proceedings.  See also Scott v. Elo, 302 F.3d 598,

2   604-05 (6th Cir. 2002) (when transcript is unavailable, habeas relief will be granted only upon a

3   showing of prejudice).

4          Here, petitioner has not argued that the court misapplied the law apart from his

5   claims of insufficiency of the evidence.  This court's rejection of the insufficiency claims governs

6   resolution of this issue as well.  There is no unreasonable application of clearly established

7   federal law here to support relief.

8   XIII.  Trial Court Was Disqualified When It Fell Asleep At Trial (Claim O)

9          Petitioner claims that the trial court was disqualified when it fell asleep at trial and

10  should not have ruled on petitioner's motion for a new trial based on the trial court's misconduct.

11  Pet. at 6h (Claim O).  The California Supreme Court denied this claim without comment.

12  Answer, Ex. J (Supreme Court opinion).  Petitioner also has filed a motion for discovery of the

13  results of an investigation conducted by the Commission on Judicial Performance, arguing that

14  these are germane to his claim of judicial repose.[12]  Respondent has failed to reply to the

15  discovery motion.

16     A.  Factual Background

17         After the bench trial was completed and petitioner admitted his prior convictions,

18  petitioner made a motion for new trial based on the fact that he believed that the judge had fallen

19  asleep during trial.  RT 158-159.  On August 4, 2000, the trial judge and petitioner discussed

20  petitioner's motion for a new trial and his allegations against the judge.  RT 168-170.  The judge

21  stated that he did not remember falling asleep and that he had both a clear recollection and clear

22  notes about the case and everything that happened.  RT 169-170.

23         On September 1, 2000, the trial judge and petitioner once again discussed the

24  motion for a new trial based on the judge's alleged sleeping.  RT 176-187.  The petitioner

25  _____

26  [12]  Plaintiff also suggests that other claims are affected by the trial judge's alleged
    somnolence, namely claims A, B, C, D, I, K, M and N.  Mot. at 3.

1  explained that he felt that the judge was asleep because the judge had not responded to

2  objections.  RT 178.  The judge said there was no evidence of this in the record.  RT 178-179.

3  The judge also commented that he was bothered by the fact that petitioner had not raised his

4  concerns until after the verdict and that petitioner had no affidavits or statements to support his

5  contentions.  RT 180-181.  Petitioner asked for part of the transcript that he said would support

6  his contentions.  RT 182-185.

7          On November 17, 2000, the motion for a new trial was heard before the trial

8  judge.  RT 192-199.  Petitioner once again asked why the motion was being heard before the

9  judge who committed the alleged misconduct.  RT 193.  The trial court explained that in motions

10 for new trials, trial judges are almost always ruling on their own conduct when they consider

11 motions for a new trial.  RT 193-194.  The trial court ruled that he had been attentive and that he

12 had not missed anything crucial or of relevance in the case.  RT 198-199.

13         The trial court then denied the rest of petitioner's motions and sentenced him to

14 forty-years-to-life.  RT 218-220.

15                 B.  Due Process And The Motion For A New Trial

16         Petitioner also contends he was denied his Sixth and Fourteenth Amendment

17 rights when the trial judge ruled on the motion for a new trial, which alleged, in part, that the

18 judge had slept through portions of the trial.  Pet. at 6h.

19         To secure habeas relief, a petitioner must allege that his conviction was obtained

20 in violation of the constitution.  See Estelle, 502 U.S. at 67-68.  Any error in the proceedings on

21 the motion for a new trial does not implicate the ultimate validity of petitioner's conviction.

22 Accordingly, federal courts have held that procedural errors made during resolution of motions

23 for a new trial or in state post-conviction proceedings do not state a claim for habeas relief.  See

24 Ortiz v. Stewart, 149 F.3d 923, 939 (9th Cir. 1998) (habeas relief not available to redress errors

25 in post-conviction proceedings); Flanagan v. Beto, 437 F.2d 895 (5th Cir. 1971) (no federal issue

26 when state court refused to hear motion for new trial that did not meet state requirements); Jones

31

1   v. Duncan, 162 F. Supp. 2d 204, 217 (S.D.N.Y. 2001) (state court's failure to hold hearing on

2   motion for new trial does not raise a federal issue).   The Eleventh Circuit has held that a judge's

3   refusal to disqualify himself from hearing a petition for collateral relief despite allegations of bias

4   did not state a claim for habeas relief.   Quince v. Crosby, 360 F.3d 1259, 1261 (11th Cir.), cert.

5   denied, ___ U.S. ___, 125 S. Ct. 436 (2004).

6          C.   Sleeping Judge

7               With only his conclusory declaration for support, petitioner argues that the trial

8   judge "repeatedly fell asleep in the course of trial testimony and closing arguments."   Pet. at 6h.

9   This does not overcome the presumption that the judge discharged his official duties properly.

10   Ferrari v. United States, 169 F.2d 353, 355 (9th Cir. 1948).

11         D.   August 8, 2005 Motion For Discovery

12              In his discovery motion, petitioner notes he submitted a complaint to the

13   Commission on Judicial Performance, "alleging misconduct by trial judge Renard Sheperd [sic]

14   as presented in petitioner's Petition for Writ of Habeas Corpus in this court."   Motion for

15   Discovery at 1.   As Exhibit B to the motion, petitioner attaches a letter from the Commission,

16   which states in relevant part:

17                     At its December meeting, after considering all of the information
                       before it about this matter, the commission determined there were
18                     no grounds for proceeding further.

19   Id., Ex. B.   Petition argues that information in the Commission's records are relevant and

20   necessary "to cast such light as to illuminate the entire circus atmosphere of petitioner's exercise

21   of his constitutional right to a fair trial . . . ."   Id.

22              A habeas petitioner is not entitled to discovery as a matter of course, but only

23   when

24                     specific allegations before the court show reason to believe that the
                       petitioner may, if the facts are fully developed, be able to demonstrate
25                     that he is . . . entitled to relief . . . .

26   Bracy v. Gramley, 520 U.S. 899, 909 (1997) (internal quotations and citations omitted); Rule

6(a) Rules Governing § 2254 Cases.

That the Commission decided to proceed no further on petitioner's complaint suggests the commissioners did not find petitioner's trial to have been conducted in a "circus atmosphere." Accordingly, petitioner has not shown that he is entitled to discover the records he seeks.

IT IS HEREBY ORDERED that:

1. Petitioner's August 8, 2005 motion for discovery is denied; and

2. The Federal Defender's Office is appointed to represent petitioner.

IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be granted on the ground that his <u>Faretta</u> waiver was not knowing or intelligent, but denied on all other grounds.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty days after being served with these findings and recommendations, any party may filed written objections with the court and serve a copy of all parties. Such a documents should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within five days after service of the objections. The parties are advised the failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 26, 2006.

UNITED STATES MAGISTRATE JUDGE

ja/2 spen0376.157

33